## Martin, et al. v. Martin, et al.

(Decided February 3, 1920.)

### Appeal from Clay Circuit Court.

1. Trusts—Limitation of Actions.—A father, who was a guardian of his children, purchased a tract of land, paying therefor $1,200.00, belonging to his children and agreeing himself to pay the balance of the purchase money, amounting to $800.00, upon payment of which the vendor was to make a deed. Subsequently, the vendor conveyed the land to the father individually, who stated that he

wanted to take title to himself in order that he might sell the land. Thereafter, he recognized the trust until his death: Held, that he held the title to the land both as a joint owner and as a trustee for his wards, and never having brought home to his wards notice of the fact that his holding was adverse, or that the trust had been repudiated, but having throughout his life recognized the trust at various times and in various ways, the statute of limitations was never set in motion, and was not available as a defense to an action by his wards to recover the land.

2.  Descent and Distribution—Source of Title as Affecting Descent.—Where a father held title to twelve-twentieths of a tract of land in trust for his four children, their interest having been purchased with pension money which he had in his hands as guardian, the interest of a child who died in infancy without issue passed to the father, the child's mother being dead, and the land not having been inherited from her.

3.  Trusts—Limitation of Actions—Action to Recover Land.—Any claim by the wards of title to the land, based on the fact that their father paid for his portion of the land by the sale of timber therefrom, cannot be sustained where it does not appear that he used more than his part of the timber for that purpose, and it does appear that the claim has long since been barred by limitation.

A. T. W. MANNING and RAWLINGS & WRIGHT for appellants.

HALL & CLOYD, A. B. HAMPTON and D. Y. LYTTLE for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

In the year 1875, Henry A. Martin married Mary Marcum, a daughter of John Marcum, who served as a federal soldier during the Civil War. Of this marriage there were born four children, Pharis, Carlo, Martha and John, who died while very young and without issue. After the death of her father, Mary Marcum applied for a pension, but died before the claim was allowed. On September 6, 1886, Henry A. Martin qualified as guardian for his infant children. On June 4, 1888, he executed a new bond as such guardian. About this time he collected for his children a pension of about $1,500.00. In the year 1889, he, with $1,200.00 of the pension money, purchased from Robert Davidson, a tract of land in Clay county. At the same time Davidson executed a title bond reciting that the consideration for the land was $2,000.00, of which $1,200.00 was paid "by the minors of Mary Martin,"

and the balance of $800.00 was to be paid by Henry A. Martin, and obligating himself, upon the payment of the balance of the purchase price, to convey the land to "said heirs of Mary Martin and Henry A. Martin" by a general warranty deed. In closing up the transaction Martin requested Davidson to make the conveyance direct to him, in view of the fact that the children were infants and he might want to sell a portion of the land. Complying with this request, Davidson conveyed the land to Henry A. Martin individually by deed dated February 27, 1891, and recorded in the Clay county clerk's office. From that time on, Henry A. Martin always recognized the fact that his children by Mary Marcum had an interest in the land, and so stated to a number of persons. Not only so, but in the year 1906, Henry A. Martin sold certain timber from the land to D. L. Walker and I. S. Manning, by deed reciting that Pharis Martin, Carlo Martin and Martha J. Hamlin, formerly Martha Martin, though having no legal title to the land nor to the timber trees growing thereon, joined in the deed in order to convey to the grantees all interest they might have in said trees, "by reason of being partly paid with pension money drawn by said H. A. Martin."

After the death of Mary Martin, Henry A. Martin married a second time, and there were born of this marriage nine children, Robert, Frank, Justice, Theo, Leonard, James, William, Phillip, and Marion Martin, who died quite young. After the death of his second wife, Henry A. Martin married a third time, and of this marriage there were born four children, Romey, Della, Lula and Parker Martin.

Henry A. Martin died in the year 1916, and on July 25th of that year Carlo Martin and others, children of Henry A. Martin by Mary Marcum, brought this suit against the children of Henry Martin by his second and third wives, and his widow, Sarah Martin, to recover the land. The defendants interposed the statute of limitations. It appearing to the court that the action was not brought until thirteen years after the youngest child of Henry A. Martin had reached his majority, the plea of limitation was sustained. Plaintiffs appeal.

The circumstances under which plaintiffs claim that Henry A. Martin purchased and took title to the property are clearly sustained by the evidence. The facts utterly preclude the theory that Henry A. Martin took

the title to himself by mistake, or for the purpose of perpetrating a fraud on his wards; nor is the case one where he repudiated the trust by taking title in his own name. On the contrary, the evidence shows that he took title in his own name in order that he might sell the land, which he could not have done had the title been taken jointly to himself and his infant wards, and that after taking title to himself he never claimed the sole ownership of the land, but continued to recognize the trust by stating to numerous persons that his wards had an interest in the land. Having held title to the land both as a joint owner and as trustee for his wards, and never having brought home to his wards notice of the fact that his holding was adverse or that the trust had been repudiated, but having throughout his life recognized the trust at various times and in various ways, the statute of limitations was never set in motion and is not available as a defense to the action to recover the land.

It appears that $1,200.00 of the pension money due the wards was invested in the land in question, while Henry A. Martin was to pay the balance of the purchase price amounting to $800.00. It follows that the interest of the wards in the land was twelve-twentieths, or three-fifths, while that of Henry was eight-twentieths, or two-fifths. However, it appears that John Martin died in infancy and without issue. Since he did not inherit the land from his mother but had an interest in it equal to his proportion of the pension money, it follows that his interest, which was one-fourth of three-fifths, or three-twentieths, passed at his death to his father, Henry A. Martin. Hence, when Henry A. Martin died, plaintiffs, Pharis Martin, Carlo Martin and Martha Hamlin were the owners of nine-twentieths of the land, while Henry A. Martin was the owner of eleven-twentieths. It appears, however, that Henry A. Martin conveyed to his son, Carlo, a certain portion of the land, the consideration being an advancement of $500.00 to his two sons, Carlo and Pharis, $250.00 of which was paid by Carlo to Pharis. The deed provided that the advancement should be deducted from their part of the estate of Henry A. Martin when a general division was made. It therefore follows that plaintiffs are entitled to nine-twentieths of the land, and also to share equally with the other children of Henry A. Martin in the other eleven-twentieths of the land after Sarah Davidson, the third wife of Henry A. Martin, has

been allotted dower, subject, however, to the advancement of $250.00 each to Carlo Martin and Pharis Martin, who will not receive any portion of the eleven-twentieths of the land owned by their father until the other children have been made equal with them.

The claim that plaintiffs are entitled to recover all the land because they paid for twelve-twentieths of it, and their father paid his portion of the purchase money by the sale of timber from the land, cannot be sustained. Under the contract of purchase, and the deed made pursuant thereto, their father acquired title to eight-twentieths of the land, and was therefore entitled to eight-twentieths of the proceeds of the timber therefrom. It does not appear that he sold more than his proportion of the timber and applied the proceeds to that part of the purchase money which he had agreed to pay, and even if he had, any claim of title by plaintiffs based on this fact was barred at the time the suit was brought.

On the return of the case the chancellor will determine whether the land should be sold or divided.

Judgment reversed and cause remanded for proceedings consistent with this opinion.