# ALLIED CHEMICAL CORP. AND THE TRAVELERS INDEMNITY CO. *v.* VAN BUREN SCHOOL DISTRICT NO. 42

78-153                                        575 S.W. 2d 445

## Opinion delivered January 15, 1979
### (In Banc)

*Bethell, Callaway & Roberts,* by: *Donald P. Callaway,* for appellants.

*Creekmore & Harriman,* for appellee.

FRANK HOLT, Justice. This appeal follows a default judgment against appellants in appellee's suit for damages resulting from an allegedly defective roof. Following a hearing to assess damages, a judgment was rendered against appellant Allied Chemical Corp. in the amount of $8,567.54 and appellant The Travelers Indemnity Co. in the amount of $332. Appellants first assert for reversal that the court erred in refusing to set aside the default judgment.

Appellee had a roof installed on one of its school buildings in December, 1965. The roof was composed of material manufactured by Barrett, then a division of Appellant Allied Chemical. Allied, with appellant Travelers as surety, issued two 20-year guaranty bonds, one a $3,850 roof bond and the other a $332 flashing bond. Leakage problems began approximately two years after installation. After several repairs to the roof, the sections over the library and cafeteria were replaced in 1974 at a cost of $8,757 to the appellee. The remainder of the roof was replaced in 1976 at a cost $85,-363 to the appellee. In the interim or August, 1975, appellee brought this action against Celotex, which had acquired Barrett in 1967, the roofer, the architects, the contractor and the appellants. Since acquiring Barrett, Celotex has accepted and defended all claims against Barrett, including roof bonds and general liability claims. Service was had on Celotex and

appellants on August 6. Celotex referred the matter to its regular area counsel, Mr. Donald Callaway. However, prior to receiving the referral, he had departed for a vacation abroad. The case was temporarily assigned to an office partner. After contacting a Celotex official, the partner timely filed a motion to quash for Celotex, challenging venue, with the view that such an action would stay any further proceedings until Callaway's return. Callaway returned to his office on September 2 and found copies of correspondence between Celotex and Travelers wherein Travelers requested the usual surety's defense. On that date Callaway promptly filed a supplemental motion to quash which stated that Celotex was "extending" its motion to include Travelers. Sometime later, Callaway discovered that his office had also received a letter from Celotex on August 22, 1975, requesting him to defend the case on behalf of Celotex, Travelers and Allied Chemical. That letter was not on Callaway's desk when he returned. After finding the letter in the office, Callaway filed another supplemental motion which "extended" Celotex's original motion to quash, challenging venue, to include Allied in addition to Travelers. Both supplemental motions to quash, together with affidavits as to the circumstances surrounding the delayed filings, were filed beyond the time in which responsive pleadings are required. Because of Allied and Travelers' failure to timely appear or plead, a default judgment was entered against them on October 2. Appellants then filed a motion to set the default judgment aside which was denied on October 31, 1975. All the proceedings were during the same term of court. An appeal here was dismissed as premature because the issue of damages had not been settled. Thereafter, Celotex filed an answer, preserving its objection to venue, asserting various defenses. As indicated, a final judgment was rendered against appellants Allied and Travelers after a hearing on damages.

Appellants argue that the default judgment should have been set aside, because the actions of counsel and circumstances, under which they took place, constituted "excusable neglect, unavoidable casualty, or other just cause" as provided in Ark. Stat. Ann. § 29-401 (Repl. 1962). It is true that, because of the harshness and drastic results of a default

judgment, it is not a favorite of the law and should be avoided when fairly possible. *Winters* v. *Lewis,* 260 Ark. 563, 542 S.W. 2d 746 (1976). However we have discussed, in several cases, what does or does not constitute a showing of "excusable neglect, unavoidable casualty or other just cause." *Perry* v. *Bale Chv. Co.,* 263 Ark. 552, 566 S.W. 2d 150 (1978); *Robertson* v. *Barnett,* 257 Ark. 365, 516 S.W. 2d 592 (1974); *Ryder Truck Rental* v. *Wren Oil Dist. Co.,* 253 Ark. 827, 489 S.W. 2d 236 (1973); *Ark. Elect. Co.* v. *Cone-Huddleston,* 249 Ark. 230, 458 S.W. 2d 728 (1970); *Barkis* v. *Bell,* 238 Ark. 683, 384 S.W. 2d 269 (1964); and *Interstate Fire Insurance Co.* v. *Tolbert,* 233 Ark. 249, 343 S.W. 2d 784 (1961). Also we have often said that the question before us, when reviewing a trial court's decision to grant or deny a motion to set aside a default, is whether that court abused its discretion. *Moore, Administratrix* v. *Robertson,* 242 Ark. 413, 413 S.W. 2d 872 (1967); and *Ark. Elect. Co.* v. *Cone-Huddleston, supra.*

Here, we cannot say that the court abused its discretion by finding that there was not a "sufficient showing of excusable neglect, unavoidable casualty or other just cause which would permit the court in the exercise of its discretion to set aside" the default judgment. Even so, appellants argue that their reliance upon Celotex's assurance that a defense would be provided should prevent us from finding that the client is bound by the default of his attorney. We do not think this contention has merit in this situation. Such a circumstance is merely one factor to be considered in determining whether the trial court abused its discretion.

Appellants next argue that Celotex's timely answer brings their case within the rule that any defense filed by one defendant, common to a codefendant, inures to the benefit of that codefendant. *Southland Mobile Home Corp.* v. *Winders,* 262 Ark. 693, 561 S.W. 2d 280 (1978); *Rogers* v. *Watkins,* 258 Ark. 394, 525 S.W. 2d 665 (1975); *Arkansas Electric Co.* v. *Cone-Huddleston,* supra; *Frow* v. *De La Vega,* 15 Wallace's Reports 552 (1872); and *Bruton et al* v. *Gregory,* 8 Ark. 177 (1847). In *Southland* the purchaser brought an action against the manufacturer and the seller (Southland) of a mobile home. In

the complaint, as here, there were several allegations as to the joint and several liability of the defendants to the plaintiffs. The manufacturer filed an answer denying "each and every material allegation contained in the complaint." There, as here, the appellant did not file an answer, resulting in a default judgment. The defaulting party filed a motion asking the court to set aside the judgment on the ground that its codefendant's answer inured to its benefit. The court denied the motion. In reversing we said:

> The motion should have been granted. The appellees are mistaken in arguing, on the basis of the result reached in *Rogers* v. *Watkins,* 258 Ark. 394, 525 S.W. 2d 665 (1975), that there must be a derivative liability in order for the answer of one defendant to inure to the benefit of another. That was the situation in *Rogers,* but the rule is not confined to that state of facts. The true test is whether the answer of the non-defaulting defendant states a defense that is common to both defendants, because then 'a successful plea . . . operates as a discharge to all the defendants but it is otherwise where the plea goes to the personal discharge of the party interposing it.' (Cases omitted.) Here the effect of the manufacturer's answer was to deny the plaintiffs' allegations of negligence and breach of warranty. That denial went to the existence of the plaintiffs' cause of action, asserted a defense common to both defendants, and therefore inured to the benefit of the appellant.

Here Celotex filed a timely answer, preserving its objection to venue, and asserted that the appellees' complaint did not state sufficient facts to constitute a cause of action, denied the allegations of appellee's complaint, interposed the statute of limitations as a complete defense, that Celotex, upon purchasing Barrett from Allied Chemical, had accepted all liability on all outstanding roof and flashing bonds, and full payment of any penal sum due under the surety bonds issued by Travelers. These denials by Celotex's answer went to the existence of appellee's cause of action and asserted defenses common to both appellants which inured to their benefit. Consequently, the trial court erred in holding otherwise.

Appellants also contend that the facts alleged in the complaint are insufficient to support the judgment. Pleadings are to be liberally construed and will support a default judgment if they fully advise a defendant of his obligations and alleged breach of them. *Kohlenberger* v. *Tyson's Foods,* 256 Ark. 584, 510 S.W. 2d 555 (1974); and *Interstate Fire Insurance Co.* v. *Tolbert, supra.* Here the complaint alleged that appellant Travelers had issued two 20-year guaranty bonds, that the conditions of the guarantees had been violated, that the roofing materials were defective and the roof has continuously leaked, that Travelers had repeatedly refused to repair or replace the roof and the damage thereto, despite demand being made upon them. It is also alleged that appellant Allied Chemical (and Celotex) had guaranteed the roof for 20 years, had supplied inferior and defective materials in breach of their contract, had installed an inferior system rather than the system described in the bonds and concealed that fact from appellee until March, 1973, and had continuously promised appellee that the roof would be completed as provided for in the contract but had not so completed the roof. It alleged that appellants and Celotex had knowledge of the defective condition of the roof since shortly after its installation and had acknowledged a duty to repair it but failed to properly do so, that the roof continues to leak and the building and interior is in a deteriorated condition as a result thereof, and that the acts of appellants have produced the roof's condition and damaged appellee in the sum of $100,-000. Certainly, these allegations were sufficient to advise appellants of their asserted obligations and breach of them.

We next discuss the proper measure of damages. Appellants installed a 20-year guaranteed roof in 1965. Approximately two years later it began to leak. Repairs were made intermittently until a portion was necessarily replaced 9 years later and the remainder 11 years later by appellee. The court prorated the replacement cost on an 18/20 basis, giving 2 years' credit for the use of the roof. Appellants argue that the allowance of 9 years' credit (11/20) of the first replacement and 11 years' credit (9/20) of the second and larger replacement rather than 2 years' (18/20) credit as applied by the court would be the appropriate basis for determining damages on a cost of replacement. Admittedly any costs of repairs and damages caused by leaks before

the reroofing would be a proper award for any damages sustained in addition to the asserted adjusted replacement cost. Perhaps *Carter* v. *Quick,* 263 Ark. 202, 563 S.W. 2d 461 (1978), cited by appellee, would justify the proper measure of damages as being the replacement cost of the roof if it had immediately begun to leak after installation necessitating replacement then. However, as indicated, these are not the facts here.

In *525 Main Street Corp.* v. *Eagle Roofing Co.*, 168 A. 2d 33 (N.J. 1961), a 5-year guaranteed roof began leaking about 2 1/2 years after it was repaired. In approving a pro rata recovery for costs of reroofing, the court said:

> The parties contracted for a 5-year result. Plaintiff [appellee] should at least receive a portion of the contract price paid to defendant [appellants], prorated for the balance of the 5-year period. In the absence of other testimony as to damages, a proration makes sense. It would be fair to the litigants, and that, after all, is the ultimate test of the correctness of an award.

The purpose of "awarding any damages for a breach of contract is to place the injured party in as good a position as he would have been had the contract been performed." *Carter* v. *Quick, supra.* Here we agree with appellants that their asserted pro rata basis, plus cost of any repairs and damages caused by leaks before replacement of the roof, is a reasonable basis for the recovery of damages by appellee. It is undisputed that appellee had the use of one portion of the roof for 9 years and of another portion for 11 years. Repairs up until those times were paid for by appellants. To allow appellee 18/20 of the replacement costs would be to ignore appellants' attempted repairs and appellee's continued use of the original roof. We view the prorating of the damages at 11/20 of the first replacement costs and 9/20 of the second as being the fairer measure of assessing recovery. However we do not agree with appellants that appellee's installation of a more expensive roof t an was provided for in the original contract was error. It appears that the 2-ply roof was represented to be equal in quality to that of the more expensive 4-ply roofing used in reroofing. Appellee was entitled to a roof that would meet the quality of a 4-ply roof.

The court awarded appellee $332 which represented the amount of Travelers' liability on its flashing bond. We do not construe the complaint as asserting nor the evidence as establishing that any damages resulted from any defects of the flashing. Further it appears that the several payments made by Travelers for repairs before replacement of the roof exceeded the face amount of Travelers' roofing and flashing bonds. The roofing bond and the flashing bond were separate and distinct obligations and limited to the face amounts.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

PURTLE, J., not participating.